IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-HC-2065-BO

| | |
|---|---|
| LOUIS LAVELLE FLETCHER, Petitioner, | ) ) ) |
| v. | ) ) ORDER ) |
| UNITED STATES PAROLE COMMISSION, et al., Respondents. | ) ) ) ) |

Louis Lavelle Fletcher, a D.C. Code Offender and parole violator, petitioned the court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. On May 3, 2012, respondents moved to dismiss the matter for lack of jurisdiction or in the alternative for failure to state a claim [D.E. 7 and 8]. On the same day, the court issued a letter giving petitioner notice of the motion [D.E. 9]. However, petitioner did not respond to the motion, and the time in which to do so has long since run. In this posture, the matter is ripe for determination.

I.   Background

On January 5, 1981, the Superior Court of the District of Columbia sentenced petitioner to 50 years in prison for the March 27, 1980, murder of his wife. Mem. in Supp., Exhibit A; Exhibit B, prehearing assessment for parole revocation hearing. On September 3, 1992, the District of Columbia Board of Parole granted petitioner parole, and he was to remain on parole supervision until August 10, 2030. Id., Exhibit C. Petitioner's parole supervision was subsequently transferred to the State of South Carolina under an interstate compact agreement, but, on June 8, 2000, the Board of Parole issued a warrant for petitioner. Id., Exhibit D, warrant and Statement of Alleged Violations. The warrant alleged that in May 2000 petitioner traveled

outside the limits of his supervision district, kidnapped Angela Ford, his girlfriend, forced her to accompany him to Washington, D.C., assaulted Ms. Ford, and threatened to kill Ms. Ford and her children. Id.

On August 5, 1998, the Parole Commission assumed jurisdiction over District of Columbia Code Offenders through the National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33, § 11231(a)(1), 111 Stat. 712, 745, D.C. Code § 24-131(a)("Revitalization Act"). The Revitalization Act gives the U.S. Parole Commission exclusive jurisdiction over all District of Columbia felony prisoners. See Franklin v. District of Columbia, 163 F.3d 625, 632 (D.C. Cir. 1998). On August 5, 2000, the Parole Commission assumed responsibility for conducting revocation hearings for D.C. Code parole violators pursuant to the National Capital Revitalization and Self-Government Improvement Act of 1997, Public Law No. 105-33, § 11231(a)(1), 111 Stat. 712, 745 (effective August 5, 1998); D.C. Code § 24-131. Under 28 C.F.R. § 2.98(g), which states that every warrant issued by the D.C. Board of Parole before August 5, 2000, "shall be deemed to be a valid warrant of the United States Parole Commission unless withdrawn by the Commission." On December 7, 2000, the U.S. Parole Commission supplemented the warrant issued by the Board of Parole. Id., Exhibit E. It alleged further parole violations involving assault and domestic violence that occurred on June 1, 1998, and August 25, 1999, before the kidnapping and assault charges on the original warrant. Id.

On July 6, 2000, the U.S. Marshal, District of South Carolina, executed the parole violator warrant returning petitioner to custody. Id., Exhibit F.

On March 6, 2001, a Parole Commission hearing examiner conducted a revocation hearing for petitioner. Id., Exhibit G, summary of the hearing. At the time, petitioner had been convicted of the 1998 criminal domestic violence charge in the General Sessions Court for Georgetown County, South Carolina, but he was entitled to a fully contested, or "local," parole revocation hearing because he had also been charged with more serious violations of parole. Id., Exhibit B, prehearing assessment, at 3. Several witnesses, including the victim of the kidnapping and assault charges, appeared at the hearing to provide testimony. Id., Exhibit G at 1-2. Petitioner also had several witnesses who appeared on his behalf. Id. The hearing examiner recommended that the Parole Commission find that petitioner had violated the conditions of parole on the charges of traveling outside the district of supervision, assault with bodily injury, failure to abstain from alcohol use, assault and battery, and two separate instances of criminal domestic violence. Id. at 2-7. He recommended no finding on the kidnapping, threats to kill, and assault with intent to kill charges. Id. The hearing examiner established petitioner's re-parole guidelines as 40-52 months based upon his parole violation conduct and his salient factor score. Id. at 11. The hearing examiner recommended that the Commission grant petitioner re-parole, but that it depart from the re-parole guidelines because of his assessment that petitioner is a more serious risk to engage in violent conduct after his release. Id.

On April 12, 2001, the Commission issued its decision revoking petitioner's parole, forfeiting all of the time petitioner had spent on parole, and granting re-parole after the service of 180 months. Id., Exhibit H, Notice of Action.

The Parole Commission conducted an interim hearing for petitioner in 2003, and made no change in its decision to parole petitioner on May 19, 2015. Id., Exhibit I, summary of the

3

hearing, and J, Notice of Action. After the 2005 interim hearing, the Commission advanced petitioner's parole date based upon his institutional program achievement, and granted re-parole on December 19, 2014. Id., See Exhibit K, summary, and L, Notice of Action.

After the 2006 interim hearing, the hearing examiner recommended that petitioner receive an award for programming, but the Commission disagreed and ordered no change in the decision to grant petitioner parole on December 19, 2014. Id., Exhibit M, summary, and N, Notice of Action. After the 2008 hearing, the examiner again recommended an advancement of the parole date, but a reviewing examiner again recommended against an award. Id., Exhibit O, summary at 3. The Commission agreed with the reviewing examiner's recommendation and ordered no change in the parole date. Id., Exhibit P, Notice of Action. At the 2010 hearing, a reviewing hearing examiner disagreed with the recommendation of the hearing examiner to grant petitioner an advancement of his parole date. Id., Exhibit Q, summary, at 3. The Commission, agreed and did not grant an award for petitioner's program achievement. Id., Exhibit R, Notice of Action. Petitioner was scheduled to receive another review hearing in November 2012, the court has no information regarding that hearing. Id., Exhibit R.

II. Issues

Petitioner makes three claims alleging that he is being improperly held against his rights. First, petitioner claims that a current District of Columbia law applies to him and thus as a revoked parolee gives him credit for the time spent on parole, resulting in the expiration of his sentence. Second, petitioner challenges the Commission's decision for two reasons: 1) the Parole Commission's failure to credit petitioner for his institutional achievements; and 2) the Parole Commission's reliance on testimony of a witness at the revocation hearing who admitted

that she lied to police to support its decision to exceed the re-parole guidelines. Third, petitioner argues a violation of the Parole Commission's rules in failing to conducted a hearing between 2008 and 2012.

III.  Discussion

In analyzing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted, a court must determine whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949–50 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). A court need not accept a complaint's legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement. See, e.g., Iqbal, 129 S. Ct. at 1949–50; Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Similarly, a court need not accept as true "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 129 S. Ct. at 1949–50.

In order for a writ of habeas corpus to issue pursuant to 28 U.S.C. § 2241, a petitioner must show that he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C § 2241(c)(3). "[T]he privilege of habeas corpus entitles the prisoner to a opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." Boumediene v. Bush, 553 U.S. 723, 128 S. Ct. 2229, 2266 (2008) (citing INS v. St. Cyr, 533 U.S. 289, 302 (2001)).

5

i.   Credit for Time Spent on Parole

Until May 2009, D.C. Code § 24-406(a) provided that if parole is revoked, the prisoner receives no credit towards his sentence for the time he spent on parole supervision. A law enacted subsequent to § 24-406, the Good Time Credits Act of 1986 ("the GTCA"), D.C. Law 6-218, § 5, 34 D.C. Reg. 484 (1987), stated that "[e]very person shall be given credit on the maximum and the minimum term of imprisonment for time spent in custody or on parole as a result of the offense for which the sentence was imposed." D.C. Code § 24-221.03. The new law was perceived to conflict with § 24-406(a) in that it could be construed that D.C. Code § 24-221.03 mandated credit for time spent on parole whether parole was subsequently revoked or not. The conflict was settled by the D.C. Court of Appeals in U.S. Parole Commission v. Noble, 693 A.2d 1084, 1085 (D.C. 1997), op. adopted, 711 A.2d 85 (D.C. 1998) (en banc) (holding that D.C. Code § 24-406 requires automatic forfeiture of street time after revocation of parole and that D.C. Code § 24-221.03 did not impliedly repeal § 24-406). Thus, the Parole Commission's revocation of petitioner's parole in 2001 and forfeiture of the time spent on parole was proper as required by D.C. Code § 24-406(a).

In December 2008, the D.C. Council passed the Equitable Street Time Amendment Act of 2008, which amended D.C. Code § 24-406 to limit the forfeiture of the time spent on parole to offenders who have been convicted of a new offense punishable by imprisonment, or who have intentionally refused or failed to respond to a request of the Parole Commission. See 74 Fed. Reg. 28602, 28603 (June 17, 2009). This law became effective on May 20, 2009 and was not retroactive; therefore, it did not affect petitioner's most recent revocation which took place in 2001. Id.

6

ii. Parole Decisions

Petitioner is a District of Columbia parolee. On August 5, 1998, the USPC assumed the District of Columbia Board of Parole's authority and was given exclusive jurisdiction over parole decisions for all D.C. felony offenders, including the exclusive authority to amend or supplement regulations interpreting or implementing the parole laws applicable to these offenders. See National Capital Revitalization and Self–Government Improvement Act of 1997, Pub.L. No. 105–33, § 11231(a)(1), 111 Stat. 712, 745 (1997) (codified as amended at D.C.Code § 24–131(a)(1)). Congress invested the USPC with power to grant or deny parole to all D.C. felony offenders convicted in D.C. courts. A district court's review of the USPC actions in a habeas proceedings is limited to determining if the USPC abused its discretion and violated a parolee's rights under the Constitution, a federal law or federal regulation, but a court may not review the USPC's discretionary decisions. Garcia v. Neagle, 660 F.2d 983, 987-89 (4th Cir. 1981). Likewise, under the District of Columbia law, the discretion to parole is grounded in statutory authority. See D.C. Code § 24-404(a). D.C. Code § 24-404(a) establishes the criteria for authorizing release on parole for D.C. offenders, and states the following:

> Whenever it shall appear to the United States Paorle Commission ("Commission") that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, that his release is not incompatible with the welfare of society, and that he or she has served the minimum sentence imposed or the prescribed portion of his or her sentence, as the case may be, the Commission may authorize his or her release on parole...

Thus, the decision to parole prisoners is left to the Commission's discretion to determine "whether the prisoner is likely to be a responsible citizen if he is returned to the community and whether release on parole is consistent with the public safety." See White v. Hyman, 647 A.2d 1175, 1179 (D.C. 1994)(emphasis added).

7

The Parole Commission has the authority to revoke parole if it finds, by a preponderance of the evidence, petitioner violated his parole by engaging in violations and new criminal conduct. See 28 C.F.R. Sec. 2.105(a), C.F.R. § 2.200, and § 2.218(a); Allston v. Gaines, 158 F. Supp. 2d 76, 80 (D. D.C. 2001). The Commission may consider evidence of offenses in which the charges were not adjudicated, dismissed, or uncharged. See Villarreal v. United States Parole Comm'n, 985 F.2d 835, 839 (5th Cir. 1993); Whitehead v. United States Parole Comm'n, 755 F.2d 1536, 1537 (11th Cir.1985) (per curiam) (The Parole Commission has the authority to make its own independent findings of criminal behavior regardless of the disposition of the defendant's criminal charge.). The court specifically notes that the weight to be given to institutional performance is left to the discretion of the Parole Commission. See Walker v. United States, 816 F.2d 1313, 1317 (9th Cir. 1987) (good institutional behavior is a factor in deciding to grant parole, but its existence does not necessarily outweigh adverse factors); Izsak v. Sigler, 604 F.2d 1205, 1207 (9th Cir. 1979) ("The Commission expressly took note of appellant's institutional record.... If appellant was aggrieved, it was in the balance struck by the Commission in making its determination as to a release date that would not depreciate the seriousness of the offense, permit disrespect for the law, or jeopardize the public welfare.").

In this case, the hearing officer considered the evidence, weighed petitioner's institutional success, made credibility determinations, found by a preponderance of the evidence that petitioner was in violation of his parole and set the parole date. Again, the credibility of the evidence in parole cases is committed to the discretion of the Parole Commission. See Roberts v. Corrothers, 812 F.2d 1173, 1179-1180 (9th Cir. 1987); Williams v. United States Parole Comm'n, 617 F. Supp. 470, 472 (M.D. Penn. 1985) (citing Iuteri v. Nardoza, 732 F.2d 32, 38 (1984)).

8

At the revocation hearing, the Commission established re-parole guidelines; however, the Commission may depart from the established guidelines "when circumstances warrant." See 28 C.F.R. § 2.21(d). When the Commission decides to depart from the re-parole guidelines, it is required to provide a written statement of the reasons for its departure. See 28 C.F.R. § 2.74(b). The Commission advised petitioner in its parole revocation decision that it had decided to exceed the guidelines for the following reasons:

> After review of all relevant factors and information presented a decision above the guidelines appears warranted because the following circumstances are present: You are a more serious risk than your salient factor score indicates due to your propensity to commit aggravated acts of violence toward women while under the influence of alcohol. Specifically, your base offense involved the murder of your ex-wife while you were intoxicated. While under parole supervision, you have committed at least 3 assaults on your girlfriend in which either a weapon was used or bodily injury resulted. At the time of each of these offenses, you were intoxicated. Also, at the time of the incidents occurring on August 25, 1999, and May 7, 2000, temporary restraining orders had been issued for you to stay away from the victim. Also, you had special conditions of your parole supervision which prohibited you from the use of alcohol. Your inability to restrain from the use of alcohol and to control your assaultive tendencies while intoxicated make you a serious risk to commit further acts of high level violence if released back to the community.

Mem. in Supp., Exhibit H at 2. The reasons provided by the Commission are adequate reasons for departing from the guidelines, because "public safety" is a legitimate concern under the District of Columbia law. See D.C. Code § 24-404(a); See Duckett v. U.S. Parole Commission, 795 F. Supp. 133, 137-38 (M.D. Pa. 1992)(reference to prisoner as serious risk if released on parole encompassed Commission's duty to consider the "welfare of society"). Petitioner is not entield to relief on these issues.

9

iii.  Hearings between 2008 and 2012

Petitioner's last argument is that the Parole Commission has not had a parole hearing since 2008. He argued that he would not receive another hearing until 2012. According to the regulations, a petitioner receives hearings every two years to consider any developments since the last hearing, after which the Commission may rescind the parole date for adverse information, advance the parole date for favorable information, or order no change in the previous decision. See 28 C.F.R. § 2.14(a). The records indicate the Parole Commission conducted an interim hearing for petitioner in 2010 and was to conduct another hearing in 2012. Mem. in Supp., Exhibit R. Petitioner does not refute this statement, nor does he respond to the motion to dismiss, and the claim is dismissed.

IV.  Conclusion

Accordingly, respondent's motion to dismiss is GRANTED [D.E. 7]. The certificate of appealability is DENIED, and the Clerk is DIRECTED to close the case.

SO ORDERED, this 16 day of January 2013.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

10